# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **EMMANUEL O. AYANWALE**, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| **vs.** | ) | **2:12-cv-2191-AKK** |
| | ) | |
| **ALABAMA DEPARTMENT OF** | ) | |
| **YOUTH SERVICES, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Emmanuel Ayanwale, a native of Nigeria, claims his former employer, the Alabama Department of Youth Services (the "Department"); its Executive Director, J. Walter Wood, Jr., in his official and individual capacities; and its Campus Administrator, James Thomas, in his individual capacity (collectively, "Defendants"), discriminated against him based on his national origin in violation of 42 U.S.C. § 1981 (Count I), the Equal Protection Clause of the Fourteenth Amendment (Count II), and Title VII of the Civil Rights Acts of 1964 ("Title VII") (Count III), and retaliated against him for complaining about discrimination in violation of Title VII (Count IV).[1] This action is before the court on Defendants' motion for summary judgment,

---

[1] Ayanwale does not assert Title VII claims against Wood or Thomas.

doc. 33, which is fully briefed, docs. 34, 41, & 50. For the reasons stated below, Defendants' motion for summary judgment is **GRANTED**.[2]

## I. SUMMARY JUDGMENT STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The court must construe the evidence and all

---

[2] Defendants also move to strike the Declaration of Emmanuel Ayanwale, doc. 43-1, almost in its entirety, doc. 49. Ayanwale submitted the Declaration in opposition to the summary judgment motion. Because the Declaration helped the court to better understand Ayanwale's contentions, and because the court can address the evidentiary issues separately, the motion to strike is **DENIED** as moot.

reasonable inferences arising from it in the light most favorable to the non-moving party. *Id*. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (*per curiam*) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560,1563 (11th Cir. 1989)).

## II. <u>FACTUAL BACKGROUND</u>[3]

On June 3, 1998, some four years after his hiring, the Department transferred Ayanwale to the Hill Hall Program at Ayanwale's request. Docs. 34-2 & 43-3. Ayanwale worked in Hill Hall without an incident until approximately three years later, when a student accused Ayanwale of choking him. Doc. 34-7. The Department reassigned Ayanwale to a different dorm pending an investigation. Doc. 34-8. Although Ayanwale denied choking the student, a compliance officer ultimately found that the accusations were most likely true. Doc. 34-9. The Department accepted the compliance officer's recommendation for a suspension rather than discharge, *id.*, and issued Ayanwale a five day suspension beginning on January 19, 2002, doc. 34-

---

[3]These are the "facts" for summary judgment purposes only and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The court has gleaned these facts from the parties' individual submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. Finally, all reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).

10.

Sometime thereafter, the Department transferred Ayanwale from Hill Hall to a different dorm. *See* doc. 43-1 ¶ 33. Ayanwale apparently worked without any major incidents until September 19, 2009, when Ayanwale sent a letter to Defendant Thomas, in which Ayanwale claimed that his supervisor, Keith Holloway, unfairly changed Ayanwale's schedule to accommodate a non-Nigerian employee. Doc. 34-19. In response to the complaint, "Thomas yelled at [Ayanwale] and accused [him] of recording [Thomas]." Doc. 43-1 ¶ 13. In addition, Thomas sent Ayanwale a memorandum informing him that he did not follow the correct grievance procedure. Doc. 34-22. Allegedly Thomas' anger carried over to late 2010, when Thomas purportedly denied Ayanwale's vacation request to visit his sick mother in Nigeria.[4]

---

[4] It appears in the record that Ayanwale submitted an FMLA leave request on September 28, 2010 to visit his sick mother in Nigeria from September 8 (although the date had already passed) through October 8, 2010. Doc. 34-28 at 2. The Department approved his request on September 30, 2010, but gave him an undesignated four weeks of leave because the dates he requested had passed. *Id.* The Department also stipulated that the four weeks could not be during the November 15, 2010, through January 15, 2011, holiday season. *Id.* Ayanwale asserts that his original request asked for most of the month of November, and Thomas added the holiday season restriction (even though this would render his request for vacation time inconsistent with his request for FMLA leave). Doc. 43-1 ¶ 22. On October 13, 2010, Ayanwale submitted, and the Department approved, an amended FMLA leave request for November 7, 2010 through November 30, 2010. Docs. 34-28 at 4; 43-1 ¶ 22. Before Ayanwale could leave for Nigeria, however, his wife was involved in a car accident. Doc. 34-12 at 18. On October 26, 2010, Ayanwale submitted, and the department approved, an FMLA leave request back-dated for October 20, 2010, through December 1, 2010. Doc. 34-28 at 6. On November 23, 2010, Ayanwale submitted, and the Department approved, another FMLA leave request to extend his current leave period through January 19, 2011. *Id.* at 7. Ayanwale returned to work on January 20, 2011. Doc. 34-29 at 10.

Doc. 43-1 ¶ 22.

On February 23, 2011, Ayanwale received a low Performance Appraisal Score from Thomas due, in part, to a reprimand he received in December 2009. Doc. 34-31. Allegedly, the Department did not calculate a similar reprimand into a non-Nigerian employee's disciplinary score in 2010. *See* doc. 44-4 at 9–12. As a result, Ayanwale wrote Wayne Booker, the Institutional Services Manager, (1) requesting a hearing regarding the anti-discrimination policy; (2) noting that he faced issues in 2010 in attempting to take vacation to visit his sick mother in Nigeria; (3) complaining that his Performance Appraisal Score included a reprimand from 2009 that was not included on his mid-year appraisal, and that he disagreed with the reprimand; and (4) reiterating his complaints from 2009 regarding the change in shift. Doc. 34-32.

Before Booker could respond, a riot involving several students and employees occurred at Weakly Hall on April 29, 2011, and Ayanwale was called in to assist. Doc. 45-3. During the riot, Ayanwale punched one student in the head repeatedly, *see* doc. 34-35, video 1 at 3:23 (19:32:58 real time), and approached another student from behind while the student was engaged with another Department officer, grabbed the student by the neck, put the student in a choke hold, and dragged the student into a

cell,[5] *see id.*, video 2 at 6:53 (19:34:40 real time).

Following the riot, the Department conducted an investigation. Initially, in a statement to a Special Investigator, Ayanwale denied striking and choking a student, but later conceded striking a student in the head. Doc. 34-36 at 29 & 31. That same day, even though the riot did not occur in Ayanwale's assigned dorm, Thomas reassigned Ayanwale to Hill Hall. Doc. 43-1 ¶ 33. Two days later, the Department placed Ayanwale on administrative leave pending a disciplinary hearing. Docs. 34-37 & 45-6. After the hearing, Wood discharged Ayanwale. Docs. 34-35 & 34-38. Ayanwale appealed his dismissal, doc. 34-40, and received a *de novo* hearing before an independent hearing officer at the State Personnel Board, doc. 34-12 at 2 & 25. The hearing officer ultimately recommended that the State Personnel Board uphold Ayanwale's discharge. *Id.* The State Personnel Board accepted the recommendation. Doc. 34-41.

---

[5] The court recognizes that Ayanwale denies choking the student: "I was accused of choking a student during the riot. I did not choke a student, I was attempting to pull him into timeout." Doc. 43-1 ¶ 32. A review of the video evidence shows Ayanwale clearly approaching a student from behind while the student was engaged with another Department officer, grabbing the student by the neck, putting the student in a choke hold, and dragging the student into a cell. *See* doc. 34-35, video 2 at 6:53 (19:34:40 real time). In other words, Ayanwale's statement that he did not choke a student "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott*, 550 U.S. at 380 (video contradicted plaintiff's version of events in a high speed chase); *but see Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (differentiating between an accurate video recording completely and clearly contradicting a party's testimony, and forensic evidence that does not so utterly discredit a party's testimony that no reasonable jury could believe it).

## III. <u>ANALYSIS</u>

Ayanwale maintains that discriminatory and retaliatory animus motivated his reassignment to Hill Hall after the riot and subsequent discharge, and asserts claims under Title VII, § 1981, and the Equal Protection Clause of the Fourteenth Amendment. "Where, as here, a plaintiff predicates liability under Title VII on disparate treatment and also claims liability under sections 1981 and [the Equal Protection Clause], the legal elements of the claims are identical." *Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985); *see also Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) (noting "that discrimination claims . . . brought under the Equal Protection Clause, [] § 1981, or Title VII . . . are subject to the same standards of proof and employ the same analytical framework"). In that respect, because Ayanwale is relying exclusively on circumstantial evidence, the burden of proof is ordinarily governed by the *McDonnell Douglas* framework. *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998) (discrimination); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (retaliation). The *McDonnell Douglas* framework first "requires the plaintiff to create an inference of discrimination [or retaliation] through [his] *prima facie* case." *Springer v. Convergys Customer Management Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Assuming the

plaintiff does so, the burden shifts to the employer to articulate a legitimate, non-discriminatory or non-retaliatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If the employer meets this burden, the plaintiff must show that the proffered reasons were pretextual. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993).

**A.    Discrimination Claims**

Ayanwale contends that Defendants discriminated against him based on his national origin when (1) Thomas reassigned Ayanwale to Hill Hall for two days following the riot and (2) Wood discharged Ayanwale. "To establish a prima facie case for disparate treatment in a [national origin] discrimination case, the plaintiff must show that: (1) [he] is a member of a protected class; (2) [he] was subjected to an adverse employment action; (3) [his] employer treated similarly situated employees outside of [his] protected class more favorably than [he] was treated; and (4) [he] was qualified to do the job." *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). Defendants challenge only the third element of this analysis, contending that Ayanwale "cannot show that he was similarly situated with another employee who was treated differently." Doc. 34 at 19.

"To make a comparison of the plaintiff's treatment to that of non-[Nigerian] employees, the plaintiff must show that he and the employees are similarly situated

in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted). If this is not the case, "the different application of workplace rules does not constitute illegal discrimination." *Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999) (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1186 (11th Cir. 1984)). In order to be considered "similarly situated," the compared employees must have been "involved in or accused of the same or similar conduct," yet "disciplined in different ways." *Holifield*, 115 F.3d at 1562 (citations omitted).

To satisfy the similarly situated prong, Ayanwale points to the non-Nigerian employees involved in the riot as appropriate comparators and contends that Defendants failed to reassign or discharge them. Doc. 41 at 34. Defendants argue that the non-Nigerian employees are not proper comparators because, unlike Ayanwale, they had no prior suspensions in their record for choking a student. *See* doc. 34 at 20–21. To rebut this contention, Ayanwale notes that "[t]he misconduct engaged in does not have to be identical or even nearly identical for another employee to be a valid comparator," and argues that the non-Nigerians involved in the riot are appropriate comparators because they were allegedly disciplined more leniently than Nigerians in the past. Doc. 41 at 31. Unfortunately, Ayanwale provides no evidence that the non-Nigerians engaged in conduct that is even remotely similar to choking

a student. While Ayanwale is correct that the misconduct does not have to be similar, "the quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). Moreover, while Ayanwale denies choking the student back in 2001, *see* doc. 43-1 ¶ 7, the court's inquiry is limited to whether Thomas and Wood honestly believed that Ayanwale, unlike the non-Nigerian employees, had a prior suspension for choking a student, not whether the 2001 allegations were true.[6] *See Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Accordingly, based on the undisputed record before this court, Ayanwale's prima facie case fails because he cannot identify an appropriate comparator.

To overcome his failure to identify a comparator, Ayanwale notes correctly that "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case. Accordingly, *the plaintiff's failure to produce a comparator does not necessarily doom* the plaintiff's case." *Smith v.*

---

[6]To the extent Ayanwale is disputing that the Department made these findings, his statements are blatantly contradicted by the record, and will not be considered. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

*Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (emphasis added). Indeed, where the plaintiff "presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent"—the essential element of a claim for discrimination—"the plaintiff will always survive summary judgment." *Lockheed-Martin*, 644 F.3d at 1328. In that respect, as circumstantial evidence of Thomas and Wood's alleged discriminatory intent, Ayanwale first contends that "he and other Nigerian employees experienced difficulty taking vacation to return to Nigeria." Doc. 41 at 28. To support this contention, Ayanwale cites to his affidavit in which he contends that three Nigerian co-workers told him that Thomas created problems for them when they wanted to take leave to visit Nigeria. Doc. 43-1 ¶¶ 18–21. Because Ayanwale is providing this contention to prove the truth of the alleged statements, they are quintessential hearsay statements which the court cannot consider. *See* Fed. R. Evid. 801(c); *Macuba v. Deboer*, 193 F.3d 1316, 1325 (11th Cir. 1999). Moreover, based on the description in the affidavit, Ayanwale would not be able to make these statements admissible at trial because his "description of [his co-workers'] supposed testimony and counsel's assurance that [the co-workers] will be subpoenaed, without more, cannot transform [the co-workers'] hearsay statements into admissible evidence for purposes of summary judgment." *North American Clearing, Inc. v. Brokerage Computer Systems, Inc.*, 666 F. Supp. 2d 1299, 1311

(M.D. Fla. 2009).

In addition to the hearsay testimony, Ayanwale also relies on the Department's interrogatory responses to try to establish discriminatory intent. According to Ayanwale, Linus Ejem had to file an EEOC action because Thomas cut his pay while Ejem was on vacation in Nigeria. Doc. 41 at 28. Unfortunately for Ayanwale, his reliance on the interrogatory to support his contention fails because the response only indicates that at Ejem filed an EEOC charge on November 20, 2008, and does not establish that Thomas, in fact, discriminated against Ejem. *See* doc. 44-5 at 3–4.

Finally, there is no evidence that Thomas even knew about Ayanwale's request for leave to care for his sick wife. The closest Ayanwale comes to supporting this contention is his statement that "Thomas did not seem to have any issue with me taking leave through January (the USA holiday months) as long as the leave was to care for my wife here in the U.S." Doc. 43-1 ¶ 23. This statement will not defeat summary judgment because it is rank speculation. Indeed, it is clear that Ayanwale does not actually *know* what Thomas' motivations were for not denying the request, or if Thomas even knew about the request. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). In other words, Thomas' purported denial of Ayanale's request for vacation time to visit Nigeria does not show

discriminatory intent.

As further support of discriminatory intent, Ayanwale contends next that the Department disciplined him more severely than non-Nigerian employees "when a student attempted to escape." *See* doc. 41 at 28. However, this contention is belied by the evidence which shows unequivocally that Ayanwale and Lacharo Williams, a non-Nigerian, were both reprimanded by *Keith Holloway* for "[f]ailure to perform a count." *See* docs. 44-1 & 49-4. Thus, this evidence does not establish Thomas' alleged discriminatory intent or that the Department treated Ayanwale differently because of his nationality.

Lastly, Ayanwale contends that "while Thomas made sure to calculate [] Ayanwale's disciplinary score as low as possible, including any reprimand disciplinary score, he did not take the same approach with non-Nigerian staff." Doc. 41 at 28–29. Unfortunately for Ayanwale, the only evidence he offers to support this contention is Joy Jackson's employee performance appraisal that was completed by Alicia M. Faire and Kennedy W. Perdue. *See* doc. 44-4 at 9–12. This appraisal does not contain Thomas' signature and there is nothing in the record to show Thomas played in role in the appraisal. As such, the appraisal is not evidence of Thomas' alleged discriminatory intent.

In short, based on this record, Ayanwale cannot "present[] 'a convincing

mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the *decisionmaker*.'" *Lockheed-Martin*, 644 F.3d at 1328 (emphasis added) (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 733 (7th Cir. 2011)). Therefore, he cannot overcome his failure to establish a prima facie case. For these reasons, Defendants' motion for summary judgment is due to be granted as it relates to Ayanwale's discrimination claims.[7]

**B.     Retaliation Claims**

Ayanwale also contends that retaliatory animus motivated (1) Thomas' decision to reassign Ayanwale to Hill Hall and (2) Wood's decision to discharge Ayanwale. To make a prima facie case of retaliation, Ayanwale "must present evidence that: (1) he engaged in statutorily protected conduct; (2) he was adversely affected by an employment decision; and (3) there was a causal connection between the statutorily protected conduct and the adverse employment decision." *Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006). Defendants' contend that Ayanwale was

---

[7]The discriminatory reassignment claim fails also because of the lack of an adverse employment action. "[T]o prove adverse employment action . . . an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original). In this case, Defendants only assigned Ayanwale to work a different dorm, albeit one Ayanwale claims is more dangerous, for two days. *See* docs. 34 at 17 ¶ 63; 41 at 17 ¶ 63. Thus, Ayanwale's reassignment is, at best, "a lateral transfer that result[ed] in no loss in pay, benefits, or classification [which] does not generally constitute an adverse employment action." *Smith v. Ala. Dep't of Pub. Safety*, 64 F. Supp. 2d 1215, 1221 (M.D. Ala. 1999).

not adversely affected by the reassignment, and that there is no causal connection between Ayanwale's complaint and the adverse action. *See* doc. 34 at 24–26.

### 1. Adversely Affected - Reassignment

To satisfy the adversely affected prong, Ayanwale "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006). However, in speaking of material adversity, the Court felt it "important to separate significant from trivial harms." *Id.* Therefore, while the court agrees with Ayanwale that, generally, a reassignment that destroys the rapport an employee has built with his fellow workers and staff can be materially adverse, *see* doc. 41 at 37–38; *Moore v. City of Philadelphia*, 461 F.3d 331, 347–48 (3rd Cir. 2006) (finding "that a reasonable jury could conclude that a lateral transfer from the district where a police officer had earned goodwill and built positive relations with the community over time" is a materially adverse action), because the reassignment here was temporary—i.e., for the period of an investigation that lasted only two days—it falls squarely in the trivial versus significant harm category the Supreme Court cautioned courts to refrain from finding materially adverse. *Burlington Northern*, 548 U.S. at 68; *see also Colon v. Tracey*, 717 F.3d 43,

50 (1st Cir. 2013) ("Where, as here, the action in question is a temporary change in job responsibilities, has no effect on an employee's salary or job title, and is applied to similarly situated employees without complaint, a plaintiff faces an uphill battle in establishing that it was materially adverse."). Accordingly, Ayanwale's prima facie case on his reassignment claim fails.

### 2. Causal Connection - Reassignment & Discharge

Alternatively, the retaliation claims fail also because Ayanwale cannot establish that his reassignment or discharge were causally related to his protected activity. Generally, a plaintiff can satisfy the causation prong by "prov[ing] that the protected activity and the negative employment action are not completely unrelated." *Meeks v. Computer Assocs.*, 15 F.3d 1013, 1021 (11th Cir. 1994) (internal citation and quotation mark omitted). This is satisfied when the plaintiff "provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999).

Ayanwale has presented evidence that he complained twice—in September 2009, and again in February 2011—about alleged unfair treatment. *See* docs. 43-1 ¶ 13; 34-32. However, Ayanwale's September 2009 complaint is too remote from his

March 2011 reassignment and discharge to establish a causal connection. *See Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (four month delay between protected activity and adverse action insufficient to establish a causal connection without other evidence). While the February 2011 complaint is in close proximity to the adverse actions, Ayanwale made the complaint to Wayne Booker, whom Ayanwale is not contending played a role in the adverse actions. Moreover, Ayanwale has presented no evidence that Thomas and Wood, the decision makers, knew about his complaint to Booker. *See Krutzig v. Pulte Home Corp.*, 602 F.3d 1231 (11th Cir. 2010) (no causal connection where "[t]here [] is no evidence in the record to support a finding that [the decision makers] knew of any [protected activity] at the time the decision was made to terminate [the plaintiff's] employment"). Absent such a showing, the retaliation claim fails because Ayanwale cannot establish the causal connection necessary to sustain his claims.

### C. Pretext - Discharge Claims

Finally, even if Ayanwale could produce sufficient evidence to prove a prima facie case of discriminatory or retaliatory discharge, summary judgment is still due on his discharge claims because Ayanwale failed to show that Defendants' articulated reasons were pretextual. According to Defendants, Wood discharged Ayanwale "for his inappropriate use of force." Doc. 34 at 18 ¶ 67. To avoid summary judgment,

Ayanwale must "demonstrate that the proffered reason was not the true reason for the employment decision." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005); *see also Hicks*, 509 U.S. at 511. However, "a reason is not pretext for discrimination [or retaliation] unless it is shown both that the reason was false, and that discrimination [or retaliation] was the real reason." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation marks and citation omitted). Ayanwale can meet his burden "either directly by persuading the court that a discriminatory [or retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* When determining whether Defendants' proffered reason for discharging Ayanwale was pretextual, it is the motive of the decisionmaker, Wood in this case, that is at issue. *See Jones v. Gerwens*, 874 F.2d 1534, 1541 (11th Cir. 1989).

Ayanwale attempts to discredit the proffered reason by pointing out that Defendants failed to discharge the non-Nigerian employees involved in the riot. Doc. 41 at 34. However, as previously discussed, unlike Ayanwale, the non-Nigerian employees involved in the riot did not have prior suspensions in their record for choking a student. *See supra* Part III.A. Consequently, the fact that the Department failed to discharge these employees is insufficient to establish that discriminatory or

retaliatory animus more likely motivated Wood or that Defendants' proffered explanation is unworthy of credence.

## V.  CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment, doc. 33, is **GRANTED**. A separate order consistent with this opinion will be entered contemporaneously.

**DONE** the 30th day of July, 2014.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE